1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RONALD W. COLLINS,                          )
                                   )     CV-N-05-0237-PMP (VPC)
       Plaintiff,                          )
                                   )
     vs.                          )     **REPORT AND RECOMMENDATION**
                                   )     <u>**OF U.S. MAGISTRATE JUDGE**</u>
STEVEN MACARTHUR, ET AL.,                          )
                                   )
       Defendants.                          )     June 14, 2006
_____)

       This Report and Recommendation is made to the Honorable Philip M. Pro, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary judgment (#26).  Plaintiff opposed (#51), and defendants replied (#52).

       The court has thoroughly reviewed the record and the motion and recommends that defendants' motion for summary judgment be granted (#28).

**I.  HISTORY & PROCEDURAL BACKGROUND**

       Plaintiff Ronald W. Collins ("plaintiff") is a prisoner at the Nevada State Prison ("NSP") in the custody of the Nevada Department of Corrections ("NDOC") (#43).  Plaintiff brought his complaint in state court, alleging prison medical staff committed medical malpractice, violated his Eighth Amendment right against cruel and unusual punishment by failing to provide him with adequate medical treatment, and retaliated against him in violation of his First Amendment rights (#11).  Although plaintiff was transferred several times, his claims mainly center on alleged civil rights violations while he was incarcerated at Ely State Prison ("ESP").  *Id*.  Plaintiff names as

defendants Ted D'Amico, NDOC medical director; and Steven MacArthur, ESP medical director. *Id*. Defendants removed to federal court pursuant to 28 U.S.C. § 1441(a)-(c) because this civil rights claim is an action arising under U.S. law over which the District Court has original jurisdiction pursuant to 28 U.S.C. § 1331 (#2, 3).

In count I, plaintiff alleges that defendants acted with gross negligence by refusing to treat a cyst on plaintiff's neck (#11). In count II, plaintiff contends that after he filed a formal complaint about Dr. MacArthur with the Nevada State Board of Medical Examiners, Dr. MacArthur retaliated against him by halting his pain medication, in violation of the First Amendment. *Id*. In count III, plaintiff asserts that defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. *Id*.

Defendants move for summary judgment, arguing that plaintiff failed to exhaust administrative remedies on all but one claim, that he has not demonstrated that his civil rights were violated, that defendant D'Amico was not personally involved in the alleged violations and that both defendants are entitled to qualified immunity (#26).

**II. DISCUSSION & ANALYSIS**

**A. Discussion**

**1. Motion for summary judgment**

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). In deciding whether to grant summary judgment, the court must view the evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment

as a matter of law.  FED. R. CIV. P. 56(C).  Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 , 323 (1986).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Only evidence which might be admissible at trial may be considered by the court in ruling on a motion for summary judgment.  FED. R. CIV. P. 56(c); *Beyene v. Coleman Security Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).  Evidence without a proper foundation cannot support a motion for summary judgment.  *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987).

Material facts are facts that might affect the outcome of the case; the court determines materiality by reference to the substantive law that controls the case.  *Anderson*, 477 U.S. at 248. Disputes over irrelevant or unnecessary facts should not be considered.  *Id*.  If, given the evidence submitted, a reasonable jury could hold for the nonmoving party, the dispute over material fact is "genuine."  *Id*.  Where there is a complete failure of proof on an essential element of the case for the nonmoving party, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323.

### 2.  Medical malpractice

The State of Nevada defines "medical malpractice" as "the failure of a physician, hospital or employee of a hospital, in rendering services, to use the reasonable care, skill or knowledge ordinarily used under similar circumstances." NRS 41A.009.  A plaintiff must submit an affidavit from a medical expert practicing in the relevant area to support his allegations.  NRS 41A.071.  Failure to provide the affidavit requires mandatory dismissal without leave to amend.  *Borger v. Eighth Judicial Dist. Court*, 102 P.3d 600, 606 (Nev. 2004).

"Medical malpractice, like other forms of negligence, involves a breach of duty which causes injury.  To be tortiously liable a physician must have departed from the accepted standard of medical care in a manner that results in injury to a patient." *Greco v. United States of America*, 893 P.2d 345, 410 (Nev. 1995).  "In a medical malpractice action a plaintiff confronted with a motion for summary judgment has the obligation to establish (1) the accepted standard of medical care or practice, (2) that the doctor's conduct departed from the standard, and (3) that his conduct was the legal cause of the injuries suffered." *Orcutt v. Miller*, 595 P.2d 1191, 1193 (Nev. 1979).

### 3.  Deliberate indifference and sufficiently serious harm

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted).  In *Farmer v. Brennan*, the Supreme Court reiterated the standards for prevailing on an Eighth Amendment claim.  511 U.S. 825, 828 (1994).  The court once again stated that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.*, *citing Helling v. McKinney*, 509 U.S. 25 (1993), *Wilson v. Seiter*, 501 U.S. 294 (1991), and *Estelle*, 429 U.S. 97.  To establish an Eighth Amendment violation, a plaintiff's

4

case must satisfy an objective standard -- that the deprivation was serious enough to amount to cruel and unusual punishment, and a subjective standard -- deliberate indifference. *See Wilson*, 501 U.S. at 297-304; *see also Farmer*, 511 U.S. at 834.

The subjective standard of deliberate indifference for Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835, *quoting Whitley v. Albers*, 475 U.S. 312, 319 (1986). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836. It is the equivalent of recklessly disregarding a substantial risk of serious harm to the inmate. *Id.*

"[D]eliberate indifference to a prisoner's serious illness or injury" is a violation of the Eighth Amendment prohibition against cruel and unusual punishment. *Estelle*, 429 U.S. at 105. In order to prove deliberate indifference, plaintiff must show that prison staff denied, delayed, or intentionally interfered with medical treatment or that the way prison staff provided medical care indicates deliberate indifference, and that plaintiff sustained damages as a result of such conduct. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Indifference may be manifested by prison staff intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed. *Estelle*, 429 U.S. at 104-05.

Mere negligence on the part of prison medical staff is not sufficient to prove deliberate indifference. *Id*. "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled in part on other grounds in WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). Prison medical staff does not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with

the opinion of the inmate-patient. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Failure to allow every requested visit to a doctor does not constitute medical indifference where the evidence shows that an inmate received medical treatment. *See Estelle*, 429 U.S. at 106-07.

**4**. **Requirement of personal participation and respondeat superior**

"Liability under section 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for constitutional violations of [her] subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted); *see also Mabe v. San Bernardino County*, 237 F.3d 1101, 1109 (9th Cir. 2001).

Because there is no respondeat superior liability under § 1983, liability of a supervisor requires an affirmative act, or failure to act where there is an affirmative duty. *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997). For example, in *Harris* the court held that FBI supervisors were liable for the shooting of a defendant where the supervisors were alleged to have developed a plan that resulted in the shooting. *Id*. However, the court was careful to note that this was not liability under a theory of respondeat superior. *Id*. Rather, the supervisors were directly liable because of their affirmative acts. *Id.* "A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted). "'The requisite causal connection can be established . . . by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" *Id*. at 1447, *quoting Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir.

1978).  The court noted that this is not a form of vicarious liability, but is direct liability.  *Id*.

**5.  Retaliation**

"[T]here is no iron curtain drawn between the Constitution and the prisons of this country."  *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974).  Prison authorities may not penalize or retaliate against an inmate for exercising the right to meaningful access to the courts.  *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995).  Prison officials may be sued under § 1983 for retaliating against a prisoner for exercising his or her constitutional rights.  *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9thCir. 2003).  To establish a prima facie case of retaliation under § 1983, the inmate-plaintiff must allege: (1) that he or she was retaliated against for exercising a constitutional right, and (2) that the alleged retaliatory action did not advance legitimate penological goals, such as preserving order and discipline.  *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).  Such claims must be evaluated in light of the deference that must be accorded to prison officials.  *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  The prisoner must submit evidence to establish a link between the exercise of constitutional rights and the allegedly retaliatory action.  *Id*.  The inmate bears the burden of pleading and proving the absence of legitimate correctional goals for the alleged retaliatory action.  *Id*. at 806.  Finally, the inmate must demonstrate that the defendants' actions caused him actual injury.  *See Resnick v. Hayes*, 213 F.3d 443, 439 (9th Cir. 2000).

**B.  Analysis**

**1.  Medical malpractice**

Defendants argue that plaintiff's complaint fails to allege any type of injury caused by defendants, fails to articulate the appropriate standard of care, and fails to allege how defendants departed from the standard of care (#52).  Defendants also emphasize that plaintiff filed a

complaint of medical negligence with the Nevada State Board of Medical Examiners (#51, Ex. E, pp. 3-11), and the Board investigated plaintiff's claims and found no reasonable basis upon which to file a formal complaint with the Board. *Id.*

Plaintiff appears to argue that he first complained of the cyst on his neck in April 2003 and was told several times that he would receive treatment but was not treated (#51). He describes how several doctors saw him and that a surgeon ultimately removed the cyst in October 2005, in a procedure that required four stitches and left a one-inch scar. *Id.*

First, plaintiff fails to include an affidavit from a medical expert practicing in a relevant area pursuant to NRS 41A.071. *See also Borger*, 102 P.3d at 606. Plaintiff does not set forth a prima facie case for medical malpractice. He does not articulate the standard of care, how defendants allegedly departed from that standard, or how he suffered injury–essential elements of his claim. *Orcutt*, 595 P.2d at 1193; *Celotex*, 477 U.S. at 323. Accordingly, defendants' motion for summary judgment is granted as to plaintiff's medical malpractice claim.

**2. Deliberate indifference**

Defendants argue that plaintiff has failed to show that they were deliberately indifferent to plaintiff's serious medical needs (#26). Defendants assert that plaintiff's medical kites and records show that they responded appropriately to plaintiff's complaints regarding a cyst on his neck, back pain, and Bell's palsy. *Id*. Plaintiff counters that he did not receive proper treatment and that many times he was promised certain courses of treatment that never occurred (#51).

First, plaintiff does not allege that Dr. D'Amico personally participated in his treatment, with the exception of his retaliation claim, which the court will discuss below (*See* #11, 51). Therefore, Dr. D'Amico cannot be liable for any Eighth Amendment violations. *Taylor*, 880 F.2d at 1045. Regarding Dr. MacArthur, the court finds that he did not act with deliberate indifference

1    to plaintiff's serious medical needs. *See Wilson*, 501 U.S. at 297-304; *see also Farmer*, 511 U.S.

2    at 834.  With respect to the cyst, plaintiff's medical records reveal that Dr. MacArthur and other

3    prison medical staff examined him many times and that, initially, it was not deemed medically

4    necessary to remove the cyst (*See, e.g.*, #51, Ex. D, E; #26, Ex. N, interrogatories 6, 7 and

5    responses thereto).  When Dr. MacArthur attempted to aspirate the cyst, he was unable to remove

6    any fluid (#51, Ex. E, p. 4).  This led the doctor to believe it was a lymph node, which he advised

7    should not be painful.  *Id.*, p. 2.  Ultimately, the determination was made that plaintiff indeed had

8    a cyst, and it was removed (#51, Ex. G).  Plaintiff apparently believes that the cyst should have

9    been removed earlier.  However, Dr. MacArthur did not violate the Eighth Amendment simply

10   because his opinions concerning medical treatment conflicted with plaintiff's opinions. *Franklin*,

11   662 F.2d at 1344.

12

13           With respect to plaintiff's back pain, the kites and medical records indicate that plaintiff

14   was seen by prison medical staff, as well as an outside orthopaedist, Dr. Richard Long, numerous

15   times (#51, Ex. B, D, H, J, R, W, p. 7).  Plaintiff was scheduled for surgery at one point, but Dr.

16   Long determined that instead plaintiff should exercise as much as he was able (#26, Ex. A,

17   medical kite dated 7/12/04, attached thereto, Ex. B; #51, Ex. R, p. 2).  The severity of plaintiff's

18   back condition is unclear; several medical notations and kites reflect that staff observed plaintiff

19   playing hand ball every day in the yard (#26, Ex. C, D; #51, Ex. D).  Nevertheless, Dr. MacArthur

20   and other physicians examined plaintiff and prescribed various medications and exercises;

21   therefore, they were not deliberately indifferent to plaintiff's medical needs.

22

23           Regarding plaintiff's facial paralysis, in August 2002, he began to suffer stroke-like

24   symptoms;  the side of his face sagged and he could not close his eye (#11).  Plaintiff was

25   diagnosed with Bell's Palsy (#51, Ex. Y).  Dr. MacArthur informed plaintiff that Bell's palsy

26

27

28

usually dissipates without treatment (#26, Ex. N, interrogatories 2, 3 and responses thereto) and gave him an eye patch and eye lubricant (#51, Ex. Y; # 26, Ex. O, interrogatories 16, 17 and responses thereto).  Plaintiff claims that medication is available to treat Bell's palsy; and he includes an excerpt from the Michigan Ear Institute website that discusses treatment with steroids but that also states that in eighty-four percent of cases the symptoms subside without any treatment (#51, Ex. Y, p. 6).  Again, plaintiff appears to disagree with Dr. MacArthur's assessment. *Franklin*, 662 F.2d at 1344.  However, the doctor responded to plaintiff's concerns, explained that Bell's palsy is not always treated, and provided the eye patch and lubricant; therefore, the doctor was not deliberately indifferent to plaintiff's medical concerns.  Accordingly, defendants' motion for summary judgment is granted as to plaintiff's Eighth Amendment claims.

### 3.  Retaliation

Plaintiff claims that defendants discontinued his prescription for indocin, a pain medication, in retaliation for plaintiff's filing a medical malpractice claim against defendants with the Nevada State Board of Medical Examiners (#51).  Defendants counter that NDOC made a policy determination to no longer treat chronic pain on a routine basis (#26).  Defendants emphasize that the new policy does not mean that pain medication is not available to plaintiff, but only that such medication will be prescribed on an individual basis.  *Id.*

The court finds that plaintiff has not demonstrated that the alleged retaliation did not advance legitimate penological goals. *Barnett*, 31 F.3d at 815-16; *Celotex*, 477 U.S. at 323.  In Dr. D'Amico's responses to interrogatories, he explained that he issued a memorandum on June 29, 2004 that indicated that effective July 5, 2004, NDOC medical staff would no longer treat long-term chronic pain on a routine basis, but would individually assess inmates.  *Id.*, Ex. N, interrogatory 9 and response thereto.  Dr. D'Amico stated that the federal Food and Drug

Administration ("FDA") has recommended that pain medications such as ibuprofen and naproxen not be used for more than fourteen days per month.  *Id.*   Plaintiff provides the June 29 memorandum describing the change in policy to ESP inmates as well as the July 1, 2004 memorandum that further explains that health concerns and the trading of medications among inmates contributed to the new policy (#51, Ex. X).  Plaintiff alleges that his pain medication was discontinued before the new policy was to go into effect, but does not specify when his medication was stopped (#51).  Responses to plaintiff's grievances also reflect this new policy and explain that there were concerns about damaging inmates' stomachs with pain medications (#51, Ex. N, O).  This court evaluates plaintiff's claims in light of the deference that must be accorded to prison officials, *Pratt*, 65 F.3d at 807, and finds that plaintiff has not demonstrated that he was retaliated against for filing a complaint against defendants with the State Board of Medical Examiners.  Accordingly, defendants' motion for summary judgment is granted as to plaintiff's retaliation claim.

Because the court finds that plaintiff has not demonstrated that any genuine issues of material fact exist regarding any of his claims, it need not consider defendants' argument that plaintiff failed to exhaust his administrative remedies as to certain claims (#26).

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff has failed to demonstrate that genuine issues of material fact exist regarding his claims of medical malpractice, Eighth Amendment violations, or retaliation.  As such, the court recommends that defendants' motion for summary judgment (#26) be GRANTED.

/ / /

/ / /

1     The parties are advised:

2       1.    Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice,

3   the parties may file specific written objections to this report and recommendation within ten days

4   of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and

5   Recommendation" and should be accompanied by points and authorities for consideration by the

6   District Court.

7

8       2.    This report and recommendation is not an appealable order and any notice of appeal

9   pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's

10  judgment.

11                          **IV.  RECOMMENDATION**

12       **IT IS THEREFORE RECOMMENDED** that defendants' motion for summary

13

14  judgment (#26) be **GRANTED**.

15       **DATED:** June 14, 2006.

16

17  _____

18                 **UNITED STATES MAGISTRATE JUDGE**

19

20

21

22

23

24

25

26

27

28